Case number 20-1032 et al. Alaska Communications Systems Holdings, Inc. Petitioner v. National Labor Relations Board. Mr. Adlong for the petitioner, Mr. Francisco Fitzmaurice for the respondent. Good morning council. Mr. Adlong, please proceed when you're ready. Good morning. May it please the court. I'm Daniel Adlong, counsel for appellant, Alaska Communications Systems Holdings, Inc. We request that the court deny enforcement of the board order for the following three reasons. First, the NLRB failed to follow specific NLRB representation rules which deprived the company of notice and an opportunity to be heard. Second, the failure to give the company notice and an opportunity to be heard caused NLRB to inappropriately add two Alaska-based employees to the petition for unit which violated the NLRB rules and caused the NLRB to conflate the appropriate unit analysis with the armored globe analysis. Third, in its community of interest analysis, the board pigeonholes facts into a specific conclusion it sought but it lacked substantial evidence to justify that conclusion and departed from precedent without providing a reason justification. For these three reasons, we believe that this court should deny enforcement of the board order. First, the board failed to follow the NLRB representation rules which deprived the company of notice and an opportunity to be heard. The union filed a petition seeking to add the Oregon-based Cable Systems employees to the Alaska unit. In response, the company filed a position statement. At that point, 102.64a requires that there is a hearing to determine if a question of representation exists and if a proper petition has been filed concerning an employee. The rules require that the union respond to the position statement. Can I back up and ask you a question before we get to the union's statement as to yours? As I read the regulations, and maybe I'm not reading it correctly, 102.63b1i talks about the employer's position and it says obviously do exactly what you did here and if you think that there's objections to the proposed unit by the union, you state those objections which you did here by flagging that you would have to have these two employees in there. It doesn't make sense with that. It's not an appropriate unit without them. But the rule goes on to say that you must also state the classifications, locations, or other employee groupings that must be added to make it an appropriate union. Added or excluded, but you were talking here about you had to add them to have an appropriate unit. I'm confident your client complies with the regulations, so isn't it a fair reading of your statement of position that you were doing what the regulation required? You're both identifying a problem with the unit proposed by the union and you're identifying what must be added to make an appropriate unit. Isn't that what your statement did? No, let me explain. So when you read those rules, the rules require that you file a statement of position and that the statement of position includes multiple employee lists. One list is the list that identifies who's in the petition for unit. Another list identifies who should be excluded and another list identifies who should be included. You only include those that should be included should you seek to expand the unit. Here, the company took the position that the petition for unit did not share community of interest with the Alaska-based unit. We did not seek to expand the unit or change the composition. We only saw that it be in a standalone unit, and so we made no suggestion and provided no list to suggest that the Alaska-based... What should have been the you can't say just the Oregon employees. Your whole argument was no, you'd have to have the two Alaska employees for a standalone unit. Our position was that if the two, our position was it separate and apart from a, if it was not a GLOBE, a standalone unit of the cable systems employees was appropriate. The reason why we pointed out the Alaska employees was because they were not included and in the analysis of a GLOBE, it made the unit inappropriate. When you conduct a GLOBE analysis, the first question is, is an identifiable distinct segment of the population? That's what the regional director explained and the regional director said, no, it's not an identifiable or distinct segment of the population. As a result, it's fragmented and the regional director's decision says at that point, the analysis should end. You only continue to do the identifyable distinct segment of the population. Since there wasn't, it should have stopped the analysis and what we were saying is the standalone unit, if it was not being GLOBED in, was a unit that would be appropriate for bargaining. So you were, so your position was that, that you were, you were litigating whether these two employees should or should not be included in this unit all along and then address community of interest. Yeah. Correct. And one of the issues too, to remember that has not really been part of this litigation and doesn't stand out is that at the start of the hearing, there was some discussion with respect to whether or not this constituted a system wide unit. And if it's a system wide unit, that makes a presumption of an approach of appropriateness. So when you take a look, for example, there's six times during the hearing where we ask and specify that the Alaska based employees aren't included. That specifically speaks to the presumption that these employees are not out. So there is not an appropriate presumption of appropriateness in the petition for unit so that there is a full review of the appropriateness and try to allocate the burden appropriately as the position say, because you're, you're saying that everyone's tied very tightly to these statements of positions. So where does your statement of position say that if you did include these two Alaska employees with, I'll just call the Oregon unit table systems group, then you would have a sufficient, you wouldn't have, you would no longer have a fragmented unit, but there wouldn't be a community interest. Where do you say if those two are in, you still don't have a community of interest in your statement of position? Well, in our statement of position, we didn't specifically speak to that. We merely said that the stand alone unit did not have a community of interest, and we did not neither suggest that they be put in. We at the hearing as we articulate our talk about these two employees in your statement of position, we didn't have a reason to talk about them because we were not putting them in. We merely identified in the statement of position that it was an inappropriate unit to add to the commute to add to the globe to the to the Alaska unit. So you didn't put anybody on notice that you were objecting to the exclusion of these two employees? Well, no, I would say that we did. Well, you're briefing argument petition in the position statement. There would have been no reason to say we're objecting to their addition because it was never identified as an issue. I'm not asking that. I'm asking where you said that this unit with these two employees added would not be would not have a community of interest with the Alaska unit because you clearly were objecting to the exclusion of these two. And so when they come in, that's true. Well, this gets to the heart of our argument. It was never identified for us that should they be included would there be a community of interest. The issue throughout the whole hearing was the Alaska based unit and the petition for unit, which only included the Oregon employees. We never had reason to suggest that we need to argue about the community of interest. Under the regulation, you don't get to just object, you're supposed to then go forward and say who needs to be added. And so you did that. And so why wouldn't you be on notice that once I have once we have what what what Alaska communications no longer thinks is a fragmented unit? Right? Once you bring those two people in, it's no longer a fragmented unit. It's obvious that you then still have to show that those two that that grouping is does not have a community of interest with the Alaska ones. It's not enough just to say they could be their own standalone unit. That's not the test. Wasn't it obvious you were going to have to show that with those two Alaska employees added they don't have a community of interest? No, I would disagree. And the reason I would disagree as like I said, is that the the regulation requires identifying what would make the unit appropriate. If you're seeking to expand it or change it here, our objection was to the globe, adding them to the Alaska unit was not necessarily that that unit by itself was inappropriate, that they shouldn't, that they shouldn't be a part of the Alaska group, because they lacked a community of interest. And then when you talk about the Alaska based employees, that speaks to the geographic proximity, and that speaks to interchange and other issues that speak to the community of interest when you're doing the community of interest analysis for the separate cable systems, Oregon based unit. Can I can I just ask, just so I understand the history here. So the unit as in with respect to the Alaska employees isn't defined as such at the at the time that the proceeding starts. So your position is at that point, we had no reason to object because we didn't know they were going to be considered to be part of it. Then during the hearing, you make several statements during the hearing that address the fact that the Alaska employees are part of the Hillsborough group. Right? That's the six statements you're talking about. So at that point, the company's at least put into issue, whether the it makes sense to have a unit that doesn't encompass the Alaska employees. I would disagree. I would look at it like this. We were given a true false test, true or false, there's a community of interest between the Alaska based employees, and the Oregon based employees. Explain your analysis. We said false. We explained the reason why the regional director came out and agreed. But then the regional director said, even though you're right, I'm still going to change it and say we're going to include the Alaska, the Alaska employees, we merely pointed to the Alaska employees to show what the appropriate burden was, and to also show that it was a fragmented unit. When you look at 102.64a, that speaks to an appropriate unit. A question of representation exists if a proper petition has been filed concerning a appropriate for the purposes of collective bargaining. At all times, we were speaking to the unit petition for because nobody at any time said we are going to include these Alaska based employees into the unit. We used it to highlight the fragmentation of the unit and to highlight the fact that because of the fact that it was fragmented, and adding them to the Alaska unit was inappropriate. And we also used it to properly allocate the burdens. Okay, let me make sure my colleagues don't have further questions for you. And then maybe we'll hear from the board. But I have. Yeah, sure. I'm sorry. Go ahead. Go ahead. Judge. I just want to know what what this Ninth Circuit cases that's going on. It sounds like there's a related case in the Ninth Circuit that was brought by the union. And is that does that involve any of the same up here or when resolution of that case affect this case in any way? I don't think resolution of that case affects this case. What happened there is the collective bargaining agreement has a grievance and arbitration procedure. And it also has a scope of agreement provision that says it only applies within the state of Alaska. The union sought to arbitrate a demand for voluntary recognition. We denied that they moved to compel arbitration. The judges ruled that's pending before the Ninth Circuit. And we've arbitrated that case. And that agreement requires that we add all the employees in Oregon into the Alaska based unit. So I guess in that respect, it does. Should we lose the arbitration? And should we lose at the Ninth Circuit? Then at that point, this proceeding would become, I guess, moot, because at that point, we would have an arbitrator saying you need to add these employees in with all the terms and conditions. And you would have the Ninth Circuit saying, no, you are supposed to arbitrate that issue. So you're in arbitration right now? We Yeah, we're filing briefing right now. And that decision could resolve as a matter of arbitration, whether you are required to recognize and include within the collective bargaining agreement provisions, this very grouping. Yes. This is slightly different with respect to when you have an armor globe analysis, you add employees into a unit. But when those employees go in, you still bargain the terms and conditions of employment for the employees. Whereas what the union seeks to do through that arbitration is compel the company to put the employees into the unit and give them the exact same terms and conditions of employment that the collective bargaining agreement applies. It sounds like that includes, there's the issue of what terms and conditions apply. But there's also a predicate question of whether an arbitrator would rule that you have to include all of these employees with the Alaska employees into a single unit? Correct. Same question we have here. Correct. It's a slightly distinct question. But at the end of the day, do they all go in? Is it? I don't get it. If they all go in, then your arguments here go nowhere. That is correct. Okay. So that's not slightly different. That's the same question. Is there a preference for whether arbitrators should decide that question before the score? What's the order of decision-making preference? Our order of decision-making preference would be that. I'm not asking your preference. I'm asking what the law requires. Sorry. Yeah. No. Well, here's, I think this is why I view the, let me explain my reasoning for why I view it slightly different. Is that because under the Armour Globe analysis, we still have bargaining rights. With respect to these employees. And although they go into the unit, the ultimate effects of that are very different than if the employees are forced in through arbitration. With that being said, the ultimate effect, if they are put in through arbitration, that would make this proceeding move. And as a result, as best as I would understand it, is arbitration would be the first part of the analysis. Does the collective bargaining agreement require them to go in? With that being said. Wait one more time. Okay. Please finish. I'm With that being said, during the hearing, this issue was raised. And the board took the position. Just to be clear, during which hearing? During the hearing at issue. During the regional director hearing? Yeah. During the hearing before the regional director, this came up. And the position from the regional director was that that's not something to be decided here. And if you want to pursue it from arbitration, that's fine. But we will proceed with this hearing before us. So if we were to rule for you, would you then take that decision to this arbitration and would it have any impact on the arbitration decision? I would take the position that it wouldn't. Because I think the questions that are being asked here are different than the questions that are being asked there. The arbitrator could still decide that those employees, all the employees are, if we said, you know, you're right, you didn't have fair process on when these employees should be added. That arbitrator could still go, those employees are in. That is correct. Under the arbitration agreement, notwithstanding a finding by us of fair process. What the arbitrator would say is those employees are in subject to section 1.9b of the collective bargaining agreement. So the analysis there is, it's a different analysis. It doesn't speak to community of interest and appropriateness of the unit. Okay, thanks. Okay, thank you, counsel. We'll hear from the government. We'll give you some rebuttal time. Mr. Francisco Fritz-Maurice. Yes, thank you, your honors. May it please the court. My name is Brady Francisco Fritz-Maurice. I represent the National Labor Relations Board, which is here seeking enforcement of its order, finding that the company violated section 85 and 1 of the National Labor Relations Act when it refused to recognize and bargain with the union after a majority of its employees in the cable systems group voted to join an existing bargaining unit already represented by the union. I'm going to start off focusing my comments on the inclusion of the two Alaska-based employees because that's what we've been discussing for the most part so far. You know, as Mr. Edlong's argument made out, the company strategy here apparently was to seek dismissal of the petition, the union's petition, by showing that the petition for a unit was inappropriate. That strategy reflects the basic misunderstanding of the board's long-standing process in what is a non-adversarial fact-finding representation hearing. Section 9b of the act tasks the board with determining a bargaining unit appropriate for the purposes of collective bargaining and shall do so, quote, in order to assure employees the fullest freedom in exercising the rights guaranteed by the act. So in a hearing, after facts are found at the hearing, if the board determines that the petition for a unit is appropriate, the analysis comes to an end and the board will order an election in which employees in that proposed unit choose whether to select union representation. If not, the petition is not necessarily dismissed, as Mr. Edlong and the company would advocate for. Rather, the board may examine alternative units either suggested by the parties, but it also has the discretion to select an appropriate unit that's from the alternative proposals of the parties. And that's been the law for years. I'm quoting from the board case Bartlett-Collins in 2001 at this point. So if the board, even if the board does have that flexibility to consider a modified unit, the regional director could have indicated to the parties that there's a consideration of a different kind of unit, and then given the parties an opportunity to address the bona fides of the different shape of unit that was being considered. But that didn't happen, right? It did happen, Your Honor. So I would say two things. One is that at every single representation hearing, the point is to find a unit that's appropriate. It's not to simply dismiss a petition at the first opportunity. But to answer your question directly, that did happen. Before the close of the hearing, the hearing officer asked whether the union would be willing to proceed in an alternative unit, for example, in a broader unit than proposed. And the council representing the union specifically said yes. And not only that, but also specifically stated that the union would be willing to proceed in either an armored global election or a regular election for a standalone unit, whether or not those units included or excluded the two Alaska employees, Kelly and Huff. So that did happen here. And the company was on notice before the end of the year. And you're saying the company was on notice because of the comment that the regional director directed towards the union? Well, for two reasons, Your Honor, for that reason, but also because the point of the hearing is to identify an appropriate unit. And it was the company, as Your Honors have noted, it was the company that introduced the issue of whether those two employees should be included or excluded. I made a note here that I think there was a statement made by Mr. Outlaw that nobody at any point said that, you know, we would add those Alaska employees to the unit. But that's not correct. The union's attorney specifically said that on the record, and that the union would be willing to proceed in that unit. So really, the fact is that the... That during the exchange that you were just talking about, that's at the end of the hearing when the regional director said, and at that point, the regional director specifically talked about adding these two employees to the unit. Yes. And the union acquiesced to that notion. That's correct, Your Honor. And then what happened with the company? Sure. So I mean, at that point, the company very well could have said, you know, wait, we didn't know that was an issue. If that's an issue, we'd like to introduce the following evidence, ABC. You know, the company could have said, made an offer of proof. Those things didn't happen. The company's only response was they can't amend their petition now, which is really beside the point. You know, as I've noted, the petition for a unit is not the only unit that the board considers. The board can consider alternate units. So the petitioner, I'm sorry, the company didn't identify any evidence they wanted to introduce. And for that reason, at this point, they can't show how they've been prejudiced at all by the proceedings in this case. And for that reason, I would argue that there's been no due process violation either. Really, it was the company that introduced this issue by, as Mr. Edlunds stated, raising on multiple occasions these two Alaska unit employees. And really, if I could take a step back, the reason that that issue came up is because of what the test is for a self-determination election. Under board law, a self-determination election is appropriate where two things are present. One, where the additional petition for sought after employees constitute an identifiable distinct segment of the unrepresented employees such that they constitute an appropriate voting group. And two, that those additional employees share a community of interest with employees in the existing unit. It's worth pausing just to soak that in because there's an existing tension there, right? You know, whenever there's evidence that the sought after employees are identifiable and distinct, that evidence is going to tend to, undermine or not undermine, but run counter to the evidence that shows that these two groups share a community of interest. So the fact that there is this tension or these bits of evidence that run counter to one another really doesn't undermine the community of interest analysis that's present in every case where a self-determination election is appropriate. And that's what we saw here. So just to touch upon the community of interest analysis, you know, unless there are further questions on the Alaska-based employees. I do have one question. Under 9b, you do have the latitude to pick the appropriate unit. Would you say that this is an employer unit, a craft unit, a plant unit, or a subdivision of one of those? I would say it's a subdivision. It's certainly not a wall-to-wall unit. It's certainly not a craft unit. So it would be, the unit here is co-extensive with the employer's subdivision of its operation called the Cable Systems Group. So it'd be a subdivision of the employer unit? Yes. Okay. Thank you. Sure. And so, yes, what the board did here was it followed its longstanding community of interest analysis. Let me ask you in that regard. So given that Holmes and Pavlenko are statutory supervisors, then how do you reconcile that with the finding there was sort of a common supervision here? Because the day-to-day supervision was different between the two groups of Holmes and Pavlenko for the Oregon folks and someone else from the Alaska group. Sure, yes. Day-to-day, what matters? That's correct, Your Honor. One of the issues that was litigated at the hearing was the eligibility of Holmes and Pavlenko as employees under the Act, and the board concluded that no, they're not employees. They're supervisors under Section 211 and therefore not eligible for inclusion in the unit. So there is that analysis that is not an issue for the supervisors. It doesn't contradict its finding that there is common day-to-day supervision between the Cable Systems Group and the Alaska unit employees. What happened here is that there is a group of employees at the Hillsboro facility that are headed up by Holmes and a group of employees that are mainly in the field or at landing stations on the coast that are headed up by Pavlenko. But those two groups actually share supervision with their Anchorage facility and also field technicians in Alaska who share supervision with two men named Brewer and Took. With regard to Pavlenko in particular, the evidence was quite strong that while he does have sufficient and DC of supervisory responsibilities to fall under Section 211, he's really not providing day-to-day supervision. He testified that he has contact with employees in his group only one to two times per week or less. Really, it's only on an as-needed basis. He has no role in evaluating employees, disciplining employees, making schedules. Really, it was just what he does pertaining to approving leave requests that qualified him as a 211 supervisor. I would also note that Bill Kozets had been the previous manager at the Hillsboro facility above Holmes and all of the employees at the Hillsboro facility. He left the company in 2017 and was not replaced. His office remained vacant and fully equipped so that managers visiting from Alaska could use his office. Managers including Brewer and Took, the two I mentioned, rotated through his office on a daily basis. In the company's brief, they note that since the closing of the record, Brewer has actually moved to Oregon and continues working out of that facility, which just underscores the point that whether Brewer was located in Alaska or Oregon, he was the one providing supervision to that group. Do you have a comment on this arbitration that's ongoing, I guess, between the union and the employer and to whether it's a proper ordering of decisions since they seem to involve the same question coming from different angles, but the same question as to whether this unit is recognized by the regional director here and the board is properly included as part of the Alaska group? Sure, and I'll preface it by saying that I'm not as familiar with the proceedings as Mr. Adlong and maybe not as prepared to answer the question as I wish I might be. However, what I would say is that this is a litigation that's been going on for a few years now. These employees voted in 2018 to be represented by the union, and the board went through the process to find facts and find that it was appropriate for them to be included in the unit, and they voted that, yes, they do want to be included. I think that to defer and wait for an arbitration decision would be to delay the employee's rights under the act, and I don't see any reason to do that. I don't have any legal authority saying that the court must wait for the arbitration decision. I don't see why that would be the case, but I haven't heard... Is the case law speaking one way or the other as to what the order should be? No, the board is seeking enforcement of its order here, and I think that the order should be enforced in this court. I see no reason why the arbitration should take precedence over that. Thanks. So, thank you, Your Honor, for your time. The board requests that this court enforce the order. Thank you. Thank you, counsel. Mr. Adlong, we'll give you the two minutes you asked for for rebuttal. Okay, thank you. I'd like to address a couple issues very quickly. First, with respect to the strategy. Had the regional director found that the unit was not appropriate for a globe, it had the full discretion to direct an election in that standalone unit, which would not have resulted in any request for review or any objections from the employer. So, there were two options. It was not only... He was not choosing between dismissing the petition or adding the Alaska-based employees. He could have directed an election in the standalone unit petition for. Second, when you consider the appropriate unit analysis, all the authority cited by the board says that the board can determine an appropriate unit. All those cases come up in a regular RC petition. None of them occur in the self-determination context. In the self-determination context, you ask if it's an identifiable segment. If it is not an identifiable segment, as the regional director's decision states, it ends the analysis. You don't conduct a community of interest analysis. That doesn't necessarily mean the petition is dismissed. It just means that you do not add them to the group. Finally, as it concerns the community of interest... The 11th Circuit State Farm decision. Why isn't that the same as what happened here? That was a unit definition case. That was a unit determination. Well, in this case, I would say we're distinct because of the fact that that case had to do with... to the regional director and the board, then a firm here to identify a unit different than what the parties proposed. I thought you were saying doesn't apply in the self-determination context, but that's exactly what was going on in State Farm. Well, what I'm saying is when you look at the cases cited by the board, the authority that they cited, all of it, none of it speaks to a self-determination context. All of it goes to cases that had to do with a standard RC petition, and that's what I was speaking to. I don't know what's an RC petition. A petition for an election, they are all called RC petitions. That's not what was going on in State Farm? Each petition for an election for a unit will always be an RC. It can have an Armour Globe component to it. So I think, for example, every case will have this one with 19 RC, a bunch of numbers. Every one will be an RC. So that's what I'm speaking to. It's the standard reference to an election petition. Okay. Okay. Thank you, counsel. We have your argument. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Millett